# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| US AIRCRAFT CORPORATION, et al., | CASE NO. 5:17-cv-2109 |
| PLAINTIFFS, | JUDGE SARA LIOI |
| vs. | |
| GEOMETRA BTE BUREAU DE TECNOLOGIA E ENGENHARIA LTDA, et al., | **MEMORANDUM OPINION AND ORDER** |
| DEFENDANTS. | |

Before the Court is defendants' motion pursuant to Fed. R. Civ. P. 12(b)(2) to dismiss for lack of personal jurisdiction.[1] (Doc. No. 16 ["Mot."].) Plaintiffs have filed a brief in opposition (Doc. No. 17 ["Opp'n"]) and defendants have filed a reply (Doc. No. 20 ["Reply"]). For the reasons set forth herein, the motion to dismiss for lack of personal jurisdiction is granted.

## I. FACTUAL BACKGROUND[2]

On October 6, 2017, plaintiffs US Aircraft Corporation ("USAC") and Raymond Williams ("Williams") (collectively, "plaintiffs")[3] filed a complaint against Geometra BTE Bureau de Tecnologia e Engenharia Ltda. ("Geometra"), a company formed under the laws of Brazil (Compl.

---

[1] In the alternative, defendants seek dismissal in favor of arbitration, which they argue is required by contract. Since the Court agrees that it lacks personal jurisdiction over these defendants, it will not address the substantive question of whether arbitration is required.

[2] To the extent the following facts are gleaned from the complaint (Doc. No. 1, Complaint ["Compl."]), they are taken as true for purposes of this motion to dismiss. Additional facts, as established by unopposed affidavits, have been included.

[3] USAC is a Nevada corporation with its principal place of business in Canton, Ohio; all of its operations are conducted in Ohio. Williams is an Ohio resident; he owns USAC. (Compl. ¶¶ 2–3; Doc. No. 17-1, Affidavit of Ray Williams ["Williams Aff."] ¶¶ 2–3.)

¶ 4), and Geometra's subsidiary, Novaer Craft Empreendimentos Aeronauticos, S.A. ("Novaer"), also formed under the laws of Brazil (*id.* ¶¶ 5–6) (collectively "defendants").[4][5]

All of plaintiffs' claims against defendants are premised upon at least two of three agreements[6] entered into by the parties with respect to various aspects of work on the A-67 Dragon aircraft (the "A-67") that USAC alleges to have developed beginning in 2003. (*See id.* ¶¶ 14–15.)

The first agreement USAC and Geometra entered into, on November 29, 2006, was an Independent Contractor Agreement ("ICA")[7] under which USAC engaged Geometra to conduct a technical assessment of the A-67. The ICA contained both a covenant by Geometra not to compete or to copy USAC's intellectual property and a covenant by Geometra not to disclose any of USAC's proprietary and confidential information without USAC's prior written consent. (*Id.* ¶¶ 18–19; ICA §§ 6, 7; *see also* Williams Aff. ¶ 11.) By its terms, the ICA was governed by Ohio law and expired on January 17, 2007. (ICA §§ 2, 11.) USAC, through Williams, negotiated the terms of the ICA in Brazil and exchanged the documents via email. (Doc. No. 16-1, Declaration of Anderson Markiewicz ["Markiewicz Decl."] ¶¶ 5–6; Williams Aff. ¶¶ 9, 11.) All of the analysis under the ICA, including the preparation of the technical assessment report on the A-67, was performed by Geometra in Brazil. (Markiewicz Decl. ¶ 7.) Geometra's sole contact with Ohio occurred in 2006 when Markiewicz, while in transit to Missouri to inspect an A-67 prototype,

---

[4] In the motion to dismiss, Novaer states it was "formerly known as" Geometra. (Mot. at 122 (all page number references are to the page identification numbers in CMECF); Doc. No. 16-2, Declaration of Paulo Emanuel Barbosa dos Santos Junqueira ["Junqueira Decl."] ¶ 5.)

[5] Initially, there was a third defendant, Faris Almazrouei ("Almazrouei"), but he was voluntarily dismissed on October 13, 2017. (*See* Doc. No. 9.)

[6] Plaintiffs insist that their complaint encompasses only the first two of the parties' three agreements. (Opp'n at 172.) It is likely they make that argument so as to avoid the arbitration provision in the third agreement. But the Court need not decide whether the third agreement applies because the primary issue before this Court—personal jurisdiction over these defendants—can be resolved even without reference to that agreement.

[7] A copy of the ICA is attached to the complaint as Ex. A, incorrectly identified in the body of the complaint as "Exhibit 1."

stopped in Ohio to meet with Williams and to view USAC's manufacturing facilities in Akron. (*Id.* ¶ 8; Williams Aff. ¶ 12.) No other Geometra employee ever traveled to Ohio in connection with the ICA. (Markiewicz Decl. ¶ 9.)

The second agreement, entered into on August 30, 2007, was among USAC, Geometra, and Pratt & Whitney Canada Corp. ("Pratt & Whitney"). These parties executed a Reciprocal Non-Disclosure Agreement (the "NDA")[8] to permit sharing of proprietary information with respect to use in the A-67 of two specific turbopropeller engines. (Compl. ¶¶ 20–21; *see also* Williams Aff. ¶¶ 13–14.) By its terms, the NDA was governed by the laws of the Province of Ontario, Canada. (NDA § 12.) No employee from Geometra ever traveled to Ohio in connection with the NDA. (*See* Markiewicz Decl. ¶ 8.)

The third agreement was between USAC and Geometra. On November 13, 2007, these parties entered into the "A67" Aircraft Design Agreement (the "Design Agreement")[9] for Geometra to provide services related to the development, production, and testing of the A-67. (Compl. ¶ 23; *see also* Williams Aff. ¶ 15.) Williams traveled to Geometra's headquarters in Brazil to discuss the terms and performance related to the Design Agreement. (Markiewicz Decl. ¶ 11.) All activity under the Design Agreement was performed in Brazil by Geometra and by a few local independent consultants and outsourced companies, although Williams represents that the serial production of the A-67 was to take place at USAC's manufacturing facility in Akron, Ohio. (*Id.* ¶ 12; Williams Aff. ¶ 16). The parties suspended all work in 2008 (Compl. ¶ 24; Williams Aff. ¶ 17), for reasons that are not in the record. The Design Agreement is governed by the laws of Brazil

---

[8] A copy of the NDA is attached to the complaint as Ex. B, incorrectly identified in the body of the complaint as "Exhibit 2."

[9] No copy of the Design Agreement was attached to the complaint; however, defendants supplied a copy with their motion, as an exhibit to a supporting declaration. (Doc. No. 16-2, Ex. 1.)

and contains a provision that requires disputes to be resolved by arbitration and any "preliminary" matter prior to arbitration to be resolved by the Court of São Paulo. (Design Agreement §§ 9.01 and 9.02.)

Anderson Markiewicz attested that, from 2006 to 2008, when he was Partner and Commercial Vice President of Geometra (Markiewicz Decl. ¶ 1), Geometra: did not own, lease, or otherwise maintain an office or physical space in Ohio or anywhere else in the United States (*id.* ¶ 13); had no employees, agents (including a registered agent), or representatives located in Ohio[10] (*id.* ¶¶ 14, 16); was not licensed to do business in Ohio (*id.* ¶ 15); did not and had not regularly solicited business in Ohio or advertised in Ohio (*id.* ¶ 17); did not pay state or local taxes in Ohio (*id.* ¶ 18); and had no other commercial contacts with Ohio (*id.* ¶ 19). Paulo Emanuel Barbosa dos Santos Junqueira, Chairman and Controller of Novaer since 2012, further affirmed each of these facts regarding *both* defendants. (Junqueira Decl., *passim*.)

## II. DISCUSSION

**A.     Standard on a Motion to Dismiss**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id*. at 555, n.3 (criticizing the *Twombly* dissent's

---

[10] Williams attests that, in October 2006, a third party introduced Williams to Greg Powers, the U.S. representative of Geometra. (Williams Aff. ¶ 5.) Williams does not indicate where Powers was located; notably, he does not affirmatively assert that Powers *was* located in Ohio.

4

assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts") (internal citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "The court need not, however, accept unwarranted factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).

**B.     The Law Relating to Personal Jurisdiction**

"The plaintiff bears the burden of establishing that jurisdiction exists." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). "Additionally, in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth *specific facts* showing that the court has jurisdiction." *Id.* (emphasis added).

On a properly supported Rule 12(b)(2) motion and opposition, the Court has three procedural alternatives; it may (1) decide the motion on affidavits alone; (2) permit discovery in aid of deciding the motion; or (3) conduct an evidentiary hearing to resolve any apparent factual questions. *Id*. When, as here, the Court elects to decide the motion upon the written submissions, "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Id*. In conducting its analysis, the Court must view the affidavits, pleadings and

related documentary evidence in the light most favorable to the plaintiff. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002).

If plaintiff meets the burden, the motion to dismiss should be denied, "'notwithstanding any controverting presentation by the moving party.'" *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)). The Court is not, however, precluded from considering undisputed factual representations of the defendant that are consistent with the representations of the plaintiff. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997).

"A federal court sitting in diversity may not exercise jurisdiction over a defendant unless courts of the forum state would be authorized to do so by state law—and any such exercise of jurisdiction must be compatible with the due process requirements of the United States Constitution." *Int'l Tech. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997). "Of course, if jurisdiction is not proper under the Due Process Clause it is unnecessary to analyze jurisdiction under the state long-arm statute, and vice-versa." *Conn v. Zakharov*, 667 F.3d 705, 711–12 (6th Cir. 2012) (citing *Brunner v. Hampson*, 441 F.3d 457, 467 (6th Cir. 2006) (holding that where the plaintiff cannot show jurisdiction under the Ohio long-arm statute a Due Process analysis is unnecessary); *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721, 724 (6th Cir. 2000) (dismissing for lack of personal jurisdiction solely on Due Process grounds)).

"Unlike other jurisdictions, Ohio does not have a long-arm statute that reaches to the limits of the Due Process Clause, and the analysis of Ohio's long-arm statute is a particularized inquiry wholly separate from the analysis of Federal Due Process law." *Conn*, 667 F.3d at 712 (citing cases). Under Ohio Rev. Code § 2307.382(A), "Ohio courts [may exercise] personal jurisdiction

over a non-resident defendant if his conduct falls within the nine bases for jurisdiction listed by the statute." *Conn.*, 667 F.3d at 712.[11]

"But a finding that the requisites for state-law long-arm jurisdiction have been met does not end the inquiry: the Due Process Clause requires that the defendant have sufficient 'minimum contact[s]' with the forum state so that finding personal jurisdiction does not 'offend traditional notions of fair play and substantial justice.'" *Conn*, 667 F.3d at 712 (citations omitted).

Personal jurisdiction exists in two forms: "general" or "specific." *See Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992).

General jurisdiction exists over a defendant when his "contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Third Nat'l Bank v. WEDGE Grp., Inc.,* 882 F.2d 1087, 1089 (6th Cir. 1989) (quotation marks omitted).

---

[11] Ohio Rev. Code § 2307.382 provides, in relevant part:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;
(2) Contracting to supply services or goods in this state;
(3) Causing tortious injury by an act or omission in this state;
(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;
(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity[;]
(8) Having an interest in, using, or possessing real property in this state;
(9) Contracting to insure any person, property, or risk located within this state at the time of contracting.

Specific jurisdiction exists when a plaintiff's claims arise out of or relate to a defendant's contacts with the forum state. *Kerry Steel*, 106 F.3d at 149; *Conti*, 977 F.2d at 981. The Sixth Circuit has established a three-part test for determining whether specific jurisdiction exists, which incorporates due process concerns:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

**C.     Analysis**

Here, plaintiffs claim that "[d]efendants are subject to this Court's personal jurisdiction because they transacted business with USAC in this judicial district." (Compl. ¶ 13.) Like Ohio courts, the Sixth Circuit interprets "transacting any business" broadly. *Brunner v. Hampson*, 441 F.3d 457, 464 (6th Cir. 2006) (citing *Ricker v. Fraza/Forklifts of Detroit*, 828 N.E.2d 205, 209 (Ohio Ct. App. 2005)).[12] The Sixth Circuit has "conclude[d] that the Ohio 'transacting any business' standard is coextensive with the purposeful availment prong of constitutional analysis." *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 432 (6th Cir. 2006).

The purposeful availment requirement is "the *sine qua non* of *in personam* jurisdiction." *S. Mach.*, 401 F.2d at 381–82. The requirement is satisfied when the defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State," and when the defendant's conduct and connection with the

---

[12] As a result of this broad interpretation, "cases involving questions of what constitutes 'transacting business' have been resolved on highly particularized facts that do not lend themselves to generalization." *Lucas v. P & L Paris Corp.*, No. 11-MA-104, 2012 WL 4356218, at *3 (Ohio Ct. App. Sept. 21, 2012).

forum are such that he "should reasonably anticipate being haled into court there." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (quotation marks omitted). This requirement ensures that a defendant is not haled into a jurisdiction based on random, fortuitous or attenuated contacts, or as the result of unilateral activity of another party or a third person. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).

A contract, in and of itself, is not sufficient to confer personal jurisdiction. *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1119 (6th Cir. 1994). Instead, as the Supreme Court has stated, a nonresident's ties must "create a substantial connection with the forum State." *Burger King Corp.*, 471 U.S. at 475.

Ohio courts have identified two factors that help determine whether an out-of-state defendant transacted business in Ohio: (1) whether the defendant initiated the dealing, and (2) whether the negotiations or discussions were conducted in Ohio or had terms affecting Ohio. *McMunigal v. Bloch*, No. 1:09CV01674, 2010 WL 2106186, at *3 (N.D. Ohio May 25, 2010) (citing cases). As noted, the burden is on plaintiffs to set forth *specific facts* to establish personal jurisdiction. The complaint fails to do so and the Williams Affidavit does not cure that deficiency.

The undisputed facts in the record, as set forth in detail above, establish the following: (1) both defendants are incorporated in Brazil; (2) neither defendant ever had any physical or business presence in Ohio; (3) plaintiffs reached out to defendants, seeking their assistance with the A-67, not the other way around; (4) there is no evidence of correspondence (written, telephonic, or otherwise), much less extensive correspondence, between the parties in furtherance of their dealings together; (5) defendants never negotiated or executed any of the three agreements between the parties in Ohio; (6) Williams traveled to Brazil to negotiate the ICA; (7) defendants'

performance under the various agreements occurred in Brazil and had no effect on Ohio;[13] and (8) defendants made only one short visit to Ohio, and that visit to Ohio was fortuitous, and occurred only because USAC's principal place of business was in Canton, Ohio. *See Int'l Tech. Consultants*, 107 F.3d at 395 (observing that the defendant "would have been pleased to communicate with [the plaintiff] wherever the latter wished" and from defendant's perspective "it was purely fortuitous that [the plaintiff] happened to have a Michigan address.").[14]

Plaintiffs have failed to meet their burden of establishing even a *prima facie* case of personal jurisdiction over the defendants since they cannot establish that defendants fall within the terms of Ohio's long-arm statute.

### III. CONCLUSION

For the reasons set forth herein, defendants are entitled to dismissal of this action for lack of personal jurisdiction and, to that extent, Doc. No. 16 is granted. The Court expresses no opinion regarding whether arbitration is required under the Design Agreement.

**IT IS SO ORDERED**.

Dated: December 26, 2018

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[13] Notably, the complaint alleges that the now-dismissed defendant Almazrouei and USAC had agreed to develop the A-67 for clients in the United Arab Emirates. (Compl. ¶ 26.) In their opposition brief, plaintiffs assert that this does not affect the analysis, since the A-67 was to be manufactured in Akron, Ohio, which explains the fact that Markiewicz traveled to Akron to view the facility. According to plaintiffs, "the manufacturing process and its location are the relevant issues in this analysis; [sic] not the location of the ultimate purchaser." (Opp'n at 183.) It is curious that, although arguing that the complaint is not brought under the Design Agreement (Opp'n at 172), plaintiffs attempt to use that agreement to argue facts that allegedly support personal jurisdiction. Even so, plaintiffs' reliance upon the manufacturing location is the very type of "unilateral activity" that has been rejected by the Supreme Court as a sufficient basis to establish personal jurisdiction. Obviously, Geometra had no control over where USAC planned to manufacture the A-67.

[14] Although the Court has not specifically analyzed personal jurisdiction under due process, it is worth noting that these facts would fall far short of establishing "minimum contacts" between defendants and Ohio.